### WIRTH v. GENERAL RAILWAY SIGNAL CO.

(Supreme Court, Appellate Division, First Department. February 4, 1910.)

MASTER AND SERVANT (§ 193*) — INJURY TO SERVANT—"FELLOW SERVANTS"— SERVANTS OF SEPARATE EMPLOYERS.

The employé of a railroad company, while working under an independent contractor in installing a new electric signal system, in order to learn such system, is a "fellow servant" of the employés of such contractor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 480–485; Dec. Dig. § 193.*

For other definitions, see Words and Phrases, vol. 3, pp. 2716–2730; vol. 8, p. 7662.]

Appeal from Trial Term, New York County.

Action for personal injuries by Harry Wirth against the General Railway Signal Company. From a judgment dismissing the complaint at the close of plaintiff's evidence, plaintiff appeals. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Richard J. Donovan (Herbert D. Cohen, of counsel), for appellant. Joseph M. Allen, for respondent.

MILLER, J.  The defendant was engaged as an independent contractor in the installation of an electric signal system for the New York Central Railroad Company.  The plaintiff was, and for 4½ years prior to the accident had been, in the general employ of the railroad as a signal repair man, charged with the duty of inspecting and repairing switches and signals, and he says that he knew how such machines operated and was familiar with their fixed and movable points.  At the time of the accident the plaintiff was, and for two weeks prior thereto had been, working with the defendant's men, assisting in the work of putting in the new system.  He says that he was doing that for the purpose of learning the system and how to operate it.  He and the foreman, one Edwards, were undertaking to adjust a switch apparatus, which had been put in, but evidently did not work properly.  Edwards was "taking up what they call lost motion on a crossbar," and requested the plaintiff to drop some oil on the different parts of the switch.  In doing that, the plaintiff got his foot between a movable bar, styled the "equalizer bar," and a tie, when a towerman, one of the defendant's servants, carelessly, because without a signal to do so, threw the switch, thereby causing the plaintiff's foot to be crushed between the bar and the tie.  It is evident that the complaint was dismissed on the ground that the plaintiff and the towerman were fellow servants; and thus we have the question presented whether a servant in the general employ of one person is to be deemed the servant of another in respect of a particular transaction.

The answer contained an admission in the following terms:

"Said defendant admits that on or about the 1st day of November, 1906, plaintiff was employed by the New York Central & Hudson River Railroad Company, and was upon the premises of said railroad company by permission and invitation of said railroad company for the purpose of watching and inspecting the operation of a certain signal system mentioned and referred to in said paragraph marked 'Fourth' in said complaint, at and near a certain tower known as 'tower D' thereof."

We start, then, with two things established: (a) The general employment of the plaintiff by the railroad company; (b) the watching and inspecting of the signal system being installed by the defendant as a part of his duties under his general employment.  From the fact that he had worked with the defendant's men for two weeks, it may be inferred that the defendant at least assented to his doing that for the purpose of learning how to operate the system.  It is necessary now to quote somewhat liberally from the plaintiff's testimony.  He said:

"I was working with these people (referring to the employés of the defendant).  *  *  *  I was under his [Edwards'] charge at the time.  *  *  *  Q. For about two weeks, Mr. Wirth, you had been with Mr. Ware, had you not? A. Yes, sir; traveling around with different men of the Signal Company.  Q.

Well, for about two weeks you had been with Mr. Ware? A. No, sir; not two weeks. I was with three men in two weeks. I was with Ware, Edwards, and Mr. Wade. I had been with Mr. Ware probably four or five days; no longer. I was helping him; doing anything I was told. I was learning the new system they were installing. I had been examining these switches—switch machines. * * * I was there to learn the operation of this switch. I was going to be what is called a 'switch maintainer,' and that has since been my position, and it was my duty to learn the working and care of the switch. To learn how it operated—the different movements and how to oil it. * * * Q. At this time were you under the instruction of Mr. Edwards? A. No, sir; I was traveling with Mr. Ware, this afternoon, because there was nothing to do inside for me. He gave me instructions as to what to do, just the same as if I was on their pay roll. I was working right along with him. Whatever he said I did, and he told me to oil the fish plates. He asked me if I would mind dropping some oil around on the different parts of the switch, which I did."

It is thus established that the plaintiff was doing the defendant's work under the direction and control of its foreman, precisely as though he was employed and paid by it. He could have learned by standing by and watching the work, as the answer admits he was doing; and no doubt if, while doing that and exercising due care himself, he had been injured by the negligence of one of the defendant's servants, the defendant would have been liable, as it would have been for an injury received by him in like manner while attempting to operate the machine for the sole purpose of learning how to do it, provided the defendant had undertaken to instruct him in that way. But his testimony shows that he was actually doing the defendant's work in installing the system and was not merely receiving instruction. His object in doing that work was to learn, and I am unable to see how the case is different from what it would have been if he had been working for pay, or if his general employer, wishing to hasten the work, had temporarily loaned him to the defendant. It is not necessary to go as far as that, however, in deciding this case; and in expressing that view, I do not speak for my Associates.

The question always is: What was the relation in respect of the particular transaction out of which the injury arose? The plaintiff's testimony makes it plain that, at the time of the injury, he was doing work for the sole purpose of helping the foreman, Edwards, to adjust the apparatus, and in doing that, got his foot in a position where it was injured. Edwards was trying out the switch, trying to correct some difficulty with it; and, to see if that would help, he asked the plaintiff if he would "mind dropping some oil around on the different parts." It is not pretended that the plaintiff needed to learn how to do that. He did it in obedience to Edwards' request, for the sole purpose of assisting him in doing the defendant's work; and at the best, in respect of that transaction, he was a volunteer, gratuitously assisting the defendant's servant. In such case, it does not matter, so far as liability of the master to the volunteer is concerned, whether the service is rendered pursuant to a request of the servant or with the master's authority. Shearm. & Redf. on Neg. (5th Ed.) § 182. And see Olive v. Whitney Marble Co., 103 N. Y. 292, 8 N. E. 552. Unless the plaintiff was temporarily assisting the defendant's men in the doing of its work, there was no excuse for his putting his foot in a two-inch space where a movable bar might crush it. As a mere

bystander, or onlooker by invitation, he could not escape the charge of contributory negligence.

The question is: Who exercised, or had the right to exercise, control? Whose will did the servant represent? There can be no doubt that, in oiling the machinery, the plaintiff put himself under the control and direction of the defendant's foreman and, for the time being, represented the will of the defendant, if we assume that the act was authorized by the defendant, which is the most favorable view to the plaintiff to take of the case. He was, therefore, the defendant's servant in respect of the particular transaction resulting in his injury, even if we do not go so far as to hold that he was its servant during the entire two weeks that he was assisting its men in doing its work. Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285; McInerney v. D. & H. Canal Co., 151 N. Y. 411, 45 N. E. 848; Higgins v. Western Union Telegraph Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537; Shearm. & Redf. on Neg. (5th Ed.) § 160 et seq.

The case of Murray v. Dwight, 161 N. Y. 301, 55 N. E. 901, 48 L. R. A. 673, principally relied upon by the appellant, is plainly distinguishable. In that case the plaintiff remained the servant of the truckman, the independent contractor, precisely as though, instead of hoisting the goods from a lower to the upper floor of a building, he had been engaged to cart them from one place to another.

The judgment should be affirmed, with costs. All concur.