This is an action ex delicto. Sam Spanja sustained serious personal injuries while assisting in the transfer of certain heavy machinery from an automobile truck on the banks of a canal to a motor vessel lying in the canal.
The accident occurred in the late afternoon on March 17, 1939, at Empire, Louisiana, which is situated on the West bank of the Mississippi River several miles below the City of New Orleans. The machinery, consisting of two independent units, one a welding machine and the other an air compressor, and the truck on which these units had been transported to Empire, Louisiana, from Thibodaux, Louisiana, belonged to the Thibodaux Boiler Works, Inc., and were in charge of employees of that company, which is engaged principally in the business of repairing steam boilers. The reason for the transportation of this machinery was that it might be used by the Thibodaux Boiler Works, Inc., in making repairs to a boiler of the Texas Company, another corporation, which, as a part of its general business of producing and distributing petroleum products, was drilling an oil well in the Louisiana marshes some six or eight miles from Empire, and which Texas Company had employed the Thibodaux Company to make the said repairs. The vessel to which the said machine was being transferred was known as the "New President" and was owned by plaintiff, Sam Spanja, and Anton Garma and, at the time of the occurrence, had been tied up in the canal by plaintiff and his brother, Chris Spanja, and was in their charge. The vessel, at the time, and plaintiff and his brother were under contract with the Texas Company. There is some dispute over the question of whether this contract was in writing and, while we deem it of no moment that we reach a conclusion on this point, we find it certain from the record that there was no written contract, but that, by verbal understanding, it had been agreed that the vessel would be used as a "stand-by" boat in connection with the drilling operations at that well and, with two men to operate it, would at all times be available for such transportation or other purposes as the Texas Company might require and that it was especially contemplated that it would be used whenever necessary in the transportation of machines, supplies and employees of the Texas Company back and forth between the scene of the drilling operations and Empire.
As illustrative of the duties of the boat and its crew, Garma, one of the owners of the boat, stated that it was to transfer "everything that was supposed to come out, when the truckloads of stuff came there to pick it up and bring it out to the rig, or get the worn out stuff from the rig and bring it in." This agreement also provided that there would be always available on the boat two men to operate it and, while there seems to have been no express understanding relative to the loading and unloading of articles such as might be transported *Page 670 
by the boat, it is clear from the record that the two men referred to would load and unload such machinery, supplies, et cetera, as might be within the reasonable limits of their physical strength, and that, where heavier articles might be involved, the Texas Company would supply necessary assistance. It was agreed that, for this use of the boat and for the services of the two men referred to, the Texas Company would pay $11 per day and would furnish fuel and lubricating oil.
Some time before the accident occurred one of the steam boilers of the Texas Company at the well developed trouble and that company communicated with the Thibodaux Company at Thibodaux and described the nature of the trouble. The Thibodaux Company decided to send three employees and the two pieces of machinery mentioned, a welding machine weighing 2,250 pounds and an air compressor weighing about 50 or 100 pounds less. J.V. Chandler, the drilling foreman of the Texas Company at the well, instructed plaintiff, Sam Spanja, to take the boat "New President" to Empire so that it might transport the Thibodaux Company's machinery and employees from that point to the well. Spanja and his brother, Chris Spanja, who at that time was, in accordance with the contract for the use of the boat, the second man thereon, docked the boat alongside the bank of a canal at Empire. When the truck arrived, Willie Dubuisson, the foreman in charge thereof in behalf of the Thibodaux Company, found that in that canal the transfer could not be safely accomplished, and Spanja suggested that another canal a little below would afford a safer and more convenient place. Accordingly, the boat and the truck were taken to the other canal and there the boat was again tied to the bank by Spanja and the transferring of the machinery commenced. The truck was backed to a position near the canal and, when it was in that position, two empty metal gasoline drums of the Texas Company were placed on end on the ground at the rear of the truck. Across these two drums there was then placed a heavy but short board, also belonging to the Texas Company, and then two other heavy and longer boards of the same company were extended from the board across the two drums to the deck of the vessel. Down this ramp or runway the welding machine, which was the heavier of the two (though there is some dispute on this point) was rolled from the truck to the deck of the boat. As the air compressor was being transferred by the same method, for some reason concerning which the witnesses do not agree, it fell from the runway or skids and struck Spanja, who was standing on the ground attempting to guide it down the runway. He was seriously injured.
Spanja seeks recovery in tort, praying for a solidary judgment for $8,904.12 against the Texas Company and the Thibodaux Boiler Works, Inc.
It is his contention that the unloading operation was being carried on by the Thibodaux Boiler Works and that the employees of that company had adopted an unsafe method of unloading in that the machinery was so heavy that it could not be safely transferred in that way and that, therefore, there is liability in that company.
He also charges that he had been sent by the Texas Company to Empire with instructions to assist the employees of the Thibodaux Company and from this he contends that the Texas Company is also liable to him since its "foreman had instructed petitioner to assist in the unloading * * * under instructions from employees of Thibodaux Boiler Works, Inc., who were in charge of said heavy machinery". There is no charge that there was anything defective about the boards or gasoline drums of the Texas Company which were made use of in the construction of the ramp or runway.
The Texas Company first filed an exception of no cause of action, asserting that the petition itself showed that there could be no liability in that company for the reason that, if Spanja could be considered as its employee, his only redress could be a recovery in compensation, whereas, if he was to be considered as an independent contractor, this status could result only from the fact that the Texas Company exercised no control over the manner in which he might perform the services contemplated by his contract, and that, hence, that company could not be liable to him in tort since it did not and could not exercise any control over him at the time of the accident, there being no officer or employee of the Texas Company present at that time.
In other words, the Texas Company contends that, by his petition, he has placed himself on the horns of a dilemma; that, if he is an employee, his recovery cannot *Page 671 
be in tort, but must be in compensation, and that, if he is not an employee and, therefore, is an independent contractor engaged in the carrying out of his independent contract, there could be no liability because the petition shows that there were no directions given him and that there was no employee of the Texas Company present at the time of the accident.
This exception was overruled and the Texas Company, while admitting the occurrence of the accident and that there existed a contract for the use of the boat and of the two men, denied that there was any negligence connected with the transferring and averred that, as a matter of fact, the method of transferring had been suggested by Spanja himself. That company also asserted that, in any event, Spanja was an independent contractor engaged in the carrying out of the duties imposed upon him by contract without any direction or control being reserved in the Texas Company.
The Thibodaux Company, by exception of no cause of action, contended that the petition shows that Spanja, when he was loaned by the Texas Company to the Thibodaux Company to assist in the transferring of the machinery, became, "pro hac vice", an employee of the Thibodaux Company and, consequently, became a fellow-servant of the other Thibodaux Company employees who were charged with negligence, the result being, according to the theory of counsel for the Thibodaux Company, that, because of the application of the fellow-servant rule, he, Spanja, cannot recover from the Thibodaux Company.
This exception also was overruled and, after a trial, there was judgment for Spanja solidarily against both defendants for $4,204.12. Both defendants have appealed and plaintiff has answered both appeals requesting that the amount awarded be increased to $8,904.12, as originally prayed for.
The relationship between Spanja and the Texas Company seems to us to have all of the earmarks of that of employer-employee. There can, of course, be no doubt that the business in which the Texas Company is engaged is within the contemplation of the compensation laws and that Spanja was brought directly into contact with the hazardous features of that business, so that, if he was an employee, his only redress must be in compensation. It is interesting to note that both Spanja and the Texas Company assume that the employer-employee relationship did not exist and that Spanja was an independent contractor. But, if he was an employee, that relationship is an absolute bar to a recovery in tort, and, once that relationship is established, there can be no escaping the fact that only in compensation may there be a recovery. See Act No. 20 of 1914, § 34; Philps v. Guy Drilling Company, 143 La. 951, 79 So. 549; Labourdette v. Doullut Williams Shipbuilding Company, Inc., 156 La. 412, 100 So. 547; Roy v. Mutual Rice Company of Louisiana, Inc., 177 La. 883,149 So. 508; Dandridge v. Fidelity Casualty Company of New York, La.App., 192 So. 887.
Counsel for the Texas Company and counsel for Spanja assume that Spanja was an independent contractor and both overlook the all-important fact that, over everything that Spanja, or the other boat employee did, the Texas Company retained the absolute right of supervision and control. Counsel for the Texas Company say in their brief that "if there were a controversy as to whether plaintiff was an employee of The Texas Company or an independent contractor at the time of the accident, we believe it could be demonstrated beyond question that, in view of the nature of the arrangement for the furnishing of transportation service by plaintiff and Garma to The Texas Company, plaintiff was clearly an independent contractor and not an employee of The Texas Company", and they base this statement on their interpretation of Johnson v. Vincennes Bridge Company,167 La. 107, 118 So. 820.
But that case is plainly to be distinguished, for there there was one job which was undertaken by the independent contractor and he had the right to perform it in his own way, without supervision or control by the other contracting party. The said contractor "undertook to unload a certain carload of steel and to haul the steel when unloaded from the railroad station to the scene of the building operations * * *". It was understood, also, that relator was to furnish all trucks and all labor necessary for doing the work". Here Spanja and his associate on the boat were not given any particular job or jobs to perform in their own way. They were required to stand by at all times and to do such work as was from time to time required of them. The case, on its facts, is very much closer to Jones v. Louisiana Oil Refining Corporation, 3 La.App. *Page 672 
85, in which the Court of Appeal for the second circuit held that the employer-employee relationship existed. The facts there were as follows: The defendant oil company did not maintain wagons, or teams, or a truck for the purpose of distributing materials, "but it employed R.J. Miller, who owned wagons and teams, to do this hauling for it. Miller was to furnish all the teams the defendant needed and to distribute machinery and supplies as directed by the manager of the defendant company. * * * Miller was paid $12.00 a day for a team and driver and he paid the driver. His teams were not engaged by the week or month but at such times as the defendant company had hauling to do. They were not engaged to haul any specific kind or quantity of supplies but such as might be directed to be moved by the defendant. If the defendant had work for a whole day Miller was paid $12.00, and if for only half a day he was paid $6.00." The court, speaking through Judge Odom, then a member of that court, said that "there is no merit in the contention that Miller was an independent contractor". The court said further:
"In the case at bar, Miller did not contract to do a certain piece of work according to his own methods. He engaged his teams and his drivers to defendant to do whatever hauling it had to be done. Miller never knew what was to be hauled nor where it was to be carried. Not only that. The defendant company directed and controlled Miller and his employees in what they did. It specified not only what was to be hauled but where to deliver it."
In the case at bar, Spanja and his associate, as we have said, were given no particular job. They were required to go to the landing at Empire whenever instructed to do so and to transport back and forth such packages, materials and other supplies and such employees as might be required. The facts of the case, we think, bring it squarely within the doctrine followed in Dick v. Gravel Logging Company, 152 La. 993, 95 So. 99, and Burt v. Davis-Wood Lumber Company, 157 La. 111,102 So. 87. See, also, Alexander v. Latimer, 5 La.App. 41; Beebe v. McKeithen Construction Company, 5 La.App. 179; Powell v. Spencer Brothers, 5 La.App. 218; James v. Hillyer-Deutsch-Edwards, 15 La.App. 71, 130 So. 257; Bell v. Albert Hanson Lumber Company,151 La. 824, 92 So. 350; Odom v. Lutcher Moore Lumber Company, 7 La.App. 458.
If, in fact, the contract had itself provided for the distribution of the $11 per day and had stipulated that Spanja should receive a fixed portion of this amount, there could be no doubt at all that it would be very clear that he should be considered as an employee and not as an independent contractor. That there may be difficulty in determining just what is his daily rate of pay does not make it necessary that it be held that one who otherwise would be classified as an employee should be treated as an independent contractor.
The compensation statute, with its amendments, was designed to cover all employees who might reasonably be brought under its paternalistic protection. In the Dick case, supra, the court said that the statute is humane in its purpose and that its scope should be enlarged and its provisions liberally construed so as to include all services that can reasonably be said to be within the said statute. If it is to be liberally construed so as to include all possible persons when they seek its protection, surely it would not do to say that the provisions of the statute should be restricted when persons, in order to recover in tort, are attempting to have themselves excluded from the coverage of the statute.
If Spanja was an employee, then, as we have said, his sole remedy would obviously be under the compensation laws, for section 34 of the act so provides, and many already cited cases so hold.
While there may have been some doubt as to whether the petition states a case clearly under the compensation act and, consequently, does not state a case in tort, we have no doubt that, as we have shown, the facts do set forth such a case. The result is that plaintiff cannot be permitted to recover from the Texas Company in tort, and this is true even though plaintiff himself strenuously maintains that he was an independent contractor and even though it is also true that the Texas Company likewise assumes this.
We now pass to a consideration of what was the relationship between Spanja and the Thibodaux Company and we find that the Thibodaux Company maintains that Spanja was not only an employee of that company "pro hac vice", but that he was a fellow-servant of its other employees, *Page 673 
and that, by this relationship, he is prevented from recovering in tort because of the effect of the fellow-servant rule. That is to say, the Thibodaux Company maintains that, if there was any negligence committed by its employees, then Spanja was a fellow-servant of those employees and cannot recover for injury resulting from negligence of his fellow-employees or servants.
Of course, Spanja maintains that he was not an employee of the Thibodaux Company, but that his relationship to that company was independent contractor with the Texas Company.
The record discloses that it was a part of the duty of the Thibodaux Company to transfer its own equipment from the truck to the boat, which boat was furnished by the Texas Company. There is a dispute concerning this, but we are convinced of the soundness of the finding of the district judge that "the manner and method of unloading the machinery from the truck to the launch was suggested by, and the actual unloading was under the direction of, employees of the Thibodaux Boiler Works, Inc." Certainly it cannot be said that that part of the undertaking was being performed by the Texas Company. If, then, Spanja, an employee of the Texas Company, was engaged in assisting the Thibodaux Company in doing a job which it was its duty to do, did he not, so far as that job is concerned, become an employee of that company?
In support of its contention that Spanja was a fellow-servant of its regular employees, the Thibodaux Company cites many cases which hold that, under similar circumstances, loaned employees have been held to be fellow-servants of the regular employees of the borrowing company, and counsel seem to overlook the result which must follow if it be held that such is the case here, for, if Spanja is to be considered as a fellow-servant of the regular employees of the Thibodaux Company, then it necessarily follows that he must first be considered as a servant or employee of that company, for one may not be a fellow-servant of other employees unless he be first found to be a servant, and, if he is a servant of the Thibodaux Company, we need not go so far as to hold him a fellow-servant of the regular employees because, once the employer-employee relationship between him and the Thibodaux Company is established, there can be no recovery in tort for the same reason which has prompted us to hold that there can be no recovery in tort against the Texas Company. The nature of the work being within the contemplation of the compensation law, there can be no recovery by an employee except in compensation.
In Hartquist v. Tamiami Trail Tours, 139 Fla. 328,190 So. 533, 538, the Supreme Court of Florida considered a very similar situation of a borrowed employee and said that the question to be answered is: "Did the Glass Company or the defendant have the exclusive power to direct and control his action in doing the work plaintiff was performing at the time of his injury?" We think that is, in truth, the question here, and we find that plaintiff has himself answered the question not only in his testimony, but in at least two sworn allegations of his petition. He says, in Article 11 of his petition, that he and his brother had no experience in handling heavy machinery and that, therefore, in assisting the employees of the Thibodaux Company, he and his said brother "acted strictly under their orders as to the manner and method in which said machinery should be unloaded". And in Article 13 he alleges "that petitioner and his said brother, in rendering said assistance, acted entirely on instructions of the employees of said Thibodaux Boiler Works, Inc., who planned and executed the manner and method of said unloading, without consulting petitioner and his said brother in any way".
In 39 C.J., page 558, § 669, is found a general statement of the situation resulting where the employees of one master are loaned to another for the carrying out of the work of the borrowing employer. There the following appears:
"* * * The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired."
As illustrative of certain circumstances in which the employees of one employer become, pro hac vice, employees of another, we find, in a note on page 560 of Volume 39 C.J., the following:
"(1) Where a blower works company contracted to erect a shavings or sawdust blower in the mill of a lumber company, and the lumber company directed plaintiff and certain other of its employees to assist in constructing a scaffold and in placing *Page 674 
a portion of the blower in position, plaintiff was prima facie a fellow-servant of the employees of the blower company and of the lumber company engaged in the construction of the scaffold. Hoveland v. National Blower Works, 134 Wis. 342, 114 N.W. 795, 14 L.R.A., N.S., 1254. (2) The employee of a railroad company, while working under an independent contractor in installing a new electric signal system, in order to learn such system, is a `fellow-servant' of the employees of such contractor. Wirth v. General R. Signal Co., 136 App. Div. 536, 121 N.Y.S. 66."
In Judson Little v. Tucker, 156 S.W. 225, 228, decided by the Texas Court of Civil Appeals, that court held that the borrowed servant became the employee of the borrowing employer. Note the following language:
"* * * Appellee voluntarily yielded to the direction of his general master to aid and assist appellants in the performance of such work as they desired, it not being specified at the time what particular thing was to be done; that he voluntarily repaired to the proper place and voluntarily yielded to the temporary control and direction of appellants' foreman * * *. Under such circumstances, if we have interpreted the authorities aright, appellee for the time being and as to the particular work in which he was engaged at the time of his injury was a fellow-servant with those of appellants, notwithstanding his general employment by the Binyon Transfer Storage Company."
The Supreme Court of the United States, in Standard Oil Company v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 254, 53 L.Ed. 480, said:
"It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor who is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished."
In reaching this conclusion that Spanja became an employee, "pro hac vice", of the Thibodaux Company, we are not running counter to the views expressed by the Supreme Court of Louisiana in Rooney v. Overseas Railway, Inc., et al., 173 La. 183,136 So. 486, in which it was held that the employee of one company, who, at the request of a representative of another company, had undertaken to do a job for the second company, did not become an employee of that second company. The facts there are very similar to those found here and must be clearly understood if a distinction in legal effect is to result.
The Overseas Company owned a steamship known as the "Seatrain" and it also owned a derrick or crane on the wharf at which the vessel was docked, several miles below the City of New Orleans. Trouble developed in the machinery of the steamship and the Todd Company was employed to make the necessary repairs. It sent an employee, Rooney, to the vessel and he undertook to make the repairs and, while doing so, was asked by a representative of the Overseas Company to attempt to locate the source of some trouble which had developed in the crane. While examining the crane, he received injuries from which he died. His survivors brought suit in tort against the Overseas Company and that company resisted recovery in tort on the ground that, when Rooney undertook to examine the crane, he became an employee of the Overseas Company, and that, hence, recovery for his death could be had only under the state compensation laws. The Supreme Court held that he had not become an employee of the Overseas Company and said that he merely undertook to do a job which was in the scope of the business of his employer, the Todd Company, and that in doing so he was merely doing what his employment impliedly authorized him to do; in other words, that, if the Overseas Company had requested the Todd Company to direct Rooney to do the emergency job on the crane, his employers would have ordered him to do so, and that, hence, in effect he was merely doing a job which, by implied contract, his employers were or would have been engaged to do.
This is not so here. Spanja was sent to Empire to transport the machinery back to the oil well. If he had been asked to transport some other machinery which had not been mentioned when his employers sent him to Empire, then the principle of the Rooney case would be applicable here. It could well have been said under such circumstances that, impliedly, his job with the Texas Company was to transport anything which might be necessary. But the transferring *Page 675 
of the machinery was not his job and it was not the job of the Texas Company. It was the job of the Thibodaux Company and when, at the request of employees of that company, he undertook to assist them in their particular work, he became an employee of their employer, the Thibodaux Company.
The principle is identical with that which was involved in Baltimore O.S.W.R. Company v. Burtch, 263 U.S. 540, 44 S.Ct. 165, 68 L.Ed. 433. There the railroad company had transported from another state a certain shipment of which Burtch was consignee and part owner. The shipment was very heavy and Burtch, who had gone to the railroad station to transport the machinery from the station, was asked by the railroad employees to assist them in unloading it from the railroad car. The Supreme Court of the United States held that in doing so Burtch became an employee of the railroad company and that, hence, recovery for his injury could be had only under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.
We think that, similarly here, Spanja became an emergency or borrowed employee of the Thibodaux Company. It necessarily follows that he has no right to recover in tort.
Spanja has not prayed in the alternative for a recovery in compensation and, therefore, this suit must be dismissed, for the Supreme Court in Labourdette v. Doullut Williams Shipbuilding Company, Inc., supra [156 La. 412, 100 So. 549], considered just such a question and said:
"The next and last question is, Can plaintiff recover in this suit under the Employers' Liability Act? In our opinion he cannot. The petition contains no demand for compensation under that act, and the courts cannot supply such a demand. The prayer for general relief will not answer the purpose of a demand of that nature, resting, as such a demand does, upon principles different from those upon which rests a suit for damages under article 2315 of the Code. See Colorado v. Johnson Iron Works,146 La. 68, 83 So. 381. In fact plaintiff has not even suggested that he cares to sue for compensation under the Employers' Liability Act, or that he considers himself entitled to compensation under it."
The judgment appealed from is annulled, avoided and reversed, and it is now ordered that plaintiff's suit against both defendants be and it is dismissed at his cost.
Reversed.