GRANDSTAFF et al. v. MERCER.

No. 14953.

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 10, 1948.

Rehearing Denied Oct. 22, 1948.

John B. Honts, of Fort Worth, Texas and Jones, Jones & Brian, and Franklin Jones, all of Marshall, Texas, for appellant, C. R. Grandstaff.

Cantey, Hanger, McKnight & Johnson, and Emory Cantey, all of Fort Worth, Texas, for appellant, Hartford Accident & Indemnity Co.

Rawlings, Sayers & Scurlock; Hill, Paddock & Langdon and Homa S. Hill, all of Fort Worth, Texas, for appellee.

SPEER, Justice.

Plaintiff C. R. Grandstaff filed this suit in a district court of Tarrant County, Texas, against defendants T. E. Mercer Teaming and Trucking Contractor, alleged to be a copartnership composed of Mrs. T. E. Mercer and George Mercer, to recover damages resulting from injuries sustained by plaintiff in the State of Louisiana.

For several years before and at the time he was injured, plaintiff had been and was a regular employee of Penrod Drilling Co., (to which we shall refer as Penrod). Hartford Accident and Indemnity Company carried Penrod's workmen's compensation insurance. Prior to the institution of this suit, the insurance carrier had paid to and for the benefit of plaintiff on account of his injuries slightly more than $2,900 for compensation, bills for doctors, nurses, hospitals, etc. The insurance carrier held a contract with plaintiff for contribution out of any judgment he should recover against defendants, equal to the amounts theretofore paid by it. With leave of court, the carrier Hartford Accident and Indemnity Co. intervened with plaintiff in this suit for such recovery. We shall refer to the parties as they were designated in the trial court.

At the conclusion of taking testimony, defendants moved for an instructed verdict, the reason assigned was in substance that at the time of the accident, the truck driver was not acting for defendants nor did he act within the scope of his employment, but that the undisputed evidence shows he was the temporary employee of Penrod. The motion was overruled and the case was submitted to the jury on special issues. The verdict was in all respects favorable to plaintiff, finding damages for him in a specified amount. Plaintiff moved for judgment on the verdict and pending that motion defendant moved for judgment notwithstanding the verdict. The motion for judgment on the verdict was denied and the one for judgment non obstante veredicto was sustained and judgment entered that plaintiff take nothing. The judgment recites that the court was of opinion he should have given an instructed verdict for defendants upon their former request. From the judgment non obstante veredicto plaintiff and intervener have appealed.

They rely upon three points of assigned error substantially as follows: Error of the court (1) in disregarding the verdict of the jury in all respects and entering judgment against appellants; (2) disregarding the verdict despite the evidence and jury finding that King (truck driver) and Grandstaff (plaintiff) were not fellow servants; and (3) disregarding the verdict and undisputed evidence on the issues of negligence and contributory negligence.

The injuries for which plaintiff sued were sustained in Louisiana and this

suit was filed and prosecuted in Texas. The substantive laws of Louisiana must control plaintiff's rights of recovery but the procedural matters involved will be controlled by the laws of this state. Art. 4678, R.C.S. of 1925; Jones v. Louisiana Western Ry. Co., Tex.Com.App., 243 S.W. 976; 11 Amer.Jur. 495.

This appeal involves a proper construction of the principles applicable to independent contractors, borrowed and loaned servants, the workmen's compensation laws and the rights of employees of another, who is subject to the compensation laws, to sue a third party in tort, who negligently inflicts injuries upon them, all as prescribed by the laws of Louisiana. Likewise, there is also involved the Texas procedural matter of the trial court's sustaining a motion for judgment non obstante veredicto.

We think it helpful to make a brief reference to some parts of the pleadings of both plaintiff and defendants. The substance of the first paragraph of plaintiff's petition is: That. on and before the day on which plaintiff received his injuries he was an employee of Penrod as a member of the drilling crew near Haynesville, La., and on that day defendants undertook to deliver to Penrod certain pipes and string the same along a roadway, to be connected by Penrod's employees. When the pipes arrived on a large truck, plaintiff's employer directed him and another employee to go with the truck and aid in unloading the pipes. The method used was that the driver drove the truck slowly along the route and plaintiff and the other man rolled the pipes off leaving them on the ground approximately end to end to be screwed together later and thus form a pipe-line. Allegations were made that defendants' truck driver was negligent in several named respects resulting in plaintiff's fall and consequent injuries.

Defendants pleaded the general denial and specially many acts of contributory negligence by plaintiff; they further specially pleaded that at the time of the accident defendants' truck and driver had been delivered to Penrod and that they were under the immediate control and direction of Penrod and not of the defendants; that defendants and the truck driver were all then and there the servants and employees of Penrod and fellow servants with plaintiff; that to seek recovery of defendants in tort contravenes the public policy of this state as provided by art. 8306, Sec. 3, R.C.S. There is an alternative plea to the effect that if defendants and their truck driver were not employees of Penrod and fellow servants with plaintiff then defendants were principals within the meaning of the Louisiana laws, having contracted with Penrod to haul the pipes and that plaintiff aided and assisted them in the furtherance of their business pursuant to an agreement between defendants and Penrod, and was entitled to compensation from defendants, that such right was exclusive and no action for tort would lie as attempted in this suit.

It will be observed that defendants' primary and affirmative defense as well as the greater part of the testimony offered were based upon the theory that they and their truck driver became the borrowed servants of Penrod and all were in Penrod's temporary employ after the arrival at destination of the shipment, which time embraced the period at which plaintiff received his injuries. Defendants then reason that since plaintiff was the regular employee of Penrod (who was subject to the workmen's compensation laws of Louisiana), he was a fellow servant with defendants and the truck driver, whose negligence (it is alleged by plaintiff) was the proximate cause of the accident; that even if plaintiff could have sued and recovered in tort against the truck driver or defendants as third persons under Louisiana laws, a recovery against the truck driver or the defendants (all being fellow servants with plaintiff) in a suit in Texas would contravene the established statutory policy of this state under art. 8306, Sec. 3, R.C.S. and therefore prohibited.

■ The rule of law in Louisiana as announced in Kimbro v. Holladay et al., La.App., 154 So. 369, is different from the settled rule in Texas. There an injured employee sued and recovered against a fellow servant of the same employer who

was subject to the Workmen's Compensation Act of that state, Act La.No. 20 of 1914, as amended, upon the statutory provision providing for actions in tort by injured persons against a third party in addition to the injured person's right of compensation from his employer. Section 4397, La.Gen.St., Act La.No. 20 of 1914, § 7, as amended. In this state, where the instant suit was prosecuted, recovery may be had in tort by an employee of an employer who is subject to the workmen's compensation act against third persons inflicting the injury provided such third person be not a fellow servant of the injured one. Art. 8306, Sec. 3, R.C.S.

■ The primary defense to plaintiff's petition to the effect that defendants' truck driver became the temporary borrowed servant of Penrod during the time the pipes were being unloaded and plaintiff was injured depends upon a proper interpretation of the universally accepted rule of loaned and borrowed servants. The recognized rule applicable to loaned and borrowed servants is in substance, that the servant of one person may, by submitting himself to the control and direction of another for a particular task, become the temporary servant of the latter, and it makes no difference whether the one to whom the servant is lent exercises his right of control and direction as to the work to be done or trusts the judgment and experience of the borrowed servant to accomplish the task. 35 Amer.Jur. 802, sec. 378; 39 C.J. 558, § 669; 56 C.J.S., Master and Servant, § 330; 136 A.L.R. 516 et seq. and annotations thereunder at page 525. Interesting discussions of the subject may also be found in Spanja v. Thibodaux Boiler Works, La.App., 2 So.2d 668, certiorari refused; and Ellegood v. Brashear Freight Lines, 236 Mo.App. 971, 162 S.W.2d 628.

Under the yardstick above announced, we must look to the record to determine if plaintiff and defendants' truck driver were fellow servants of Penrod when the accident happened. To have been fellow servants they must have both been employees (regular or temporary) of Penrod. Plaintiff was admittedly a regular employee of Penrod and the truck driver could only have been a temporary employee under the rule of borrowed servants, since he was admittedly the regular employee of defendants. The general rule applicable to master and servant has its genesis in a contract, expressed or implied, of employment by the one and acceptance by the other.

Let us turn to the testimony and see the nature of the contract between Penrod and defendants for the hauling of the pipes from near Longview, Texas to a "location" near Haynesville, La. to see what were the duties and responsibilities of each, defendants and Penrod.

Mr. Mercer (one of the defendants) testified substantially that he was in the general business of hauling by truck heavy commodities including oil well supplies; had done a great deal of such work for Penrod; the custom between them was that when Penrod wanted something hauled its representative would call witness on the 'phone, tell him to haul named articles from a given place to another; if Penrod wanted helpers to accompany the truck the telephone order would so state; no helpers were requested by Penrod to accompany the load of pipes in question; none were sent by defendants for they knew Penrod would furnish helpers to unload it. That the custom between the parties was if the pipes were to be strung (for laying a line) defendants would always instruct their truck driver to string them with the truck he was driving, and Penrod would pay defendants as a stipulated rate for such extra time consumed in stringing over what time would have been consumed by the driver in unloading in a single place; If helpers to unload and string the pipes had been sent by defendants they would have been entitled to charge Penrod for the time of such helpers from the time they left the point of shipment until they returned from its destination; knowing Penrod knew this the witness said he knew when the shipment was ordered Penrod would furnish the additional help needed to unload and to string the pipe if that was to be done; witness did "bill" Penrod for the extra time consumed by defendants' truck driver in stringing the pipes and

doing some other hauling on the lease requested by Penrod, over and above the regulation tariffs for the transportation by defendants of the pipes. Witness said he had always adopted the policy of having his truck drivers unload their trucks at such times, places and manner as the consignee directed even though it did involve more time and expense, since he could charge extra for such work and it made a satisfied customer.

The truck driver testified in substance that defendants told him to take a truck and a helper and go to the place where the pipes were to be loaded and to haul them to the location of Penrod near Haynesville, La., and to there contact Penrod's foreman and learn where to unload and to string the pipes if Penrod requested it; He was told by defendants not to take a helper with him after the loading was completed; witness did as instructed; upon arrival with the load Penrod's foreman told him to string the pipes from the truck and pointed out a road along which the pipes were to be strung; the foreman told plaintiff and another workman to go with the truck and help string the pipes; while so stringing the line plaintiff received the injuries complained of. Witness testified at length about the acts of negligence with which he was charged and the contributory negligence of plaintiff asserted by defendants.

Penrod's foreman testified, but shed little light on the original contract between Penrod and defendants as to the shipment; he is not the man who ordered the shipment; witness said he knew what the load contained and did not wait for the driver to say anything but told him where to string the pipes, pointing out the road he was to take and find where pipes had already been strung and to begin stringing at the end of the line; witness said he did not instruct the driver what or how to do the work but only told him "what he was to do and he done it." There are other parts of his testimony brought out on cross examination which indicate that the only instructions given to the truck driver was the location along the road and the direction he was to string the pipes. We could safely say that defendants were warranted in placing the construction they did on some parts of the witness' testimony, which of course raised an issue of fact with reference to Penrod's foreman assuming direction and control of the truck driver's acts in unloading. This was one of defendants' defensive issues and if raised by the testimony they were entitled to have it submitted to the jury, and for that reason, if not for other reasons later to be mentioned, no instructed verdict should have been given as indicated by the court in sustaining the motion for judgment notwithstanding the verdict.

In a form which if timely objected to, could not be approved by us, the issue was presented to the jury by a lengthy and highly complicated special issue No. 22, which need not be quoted here. Plaintiff's brief asserts that the issue was given at the request of defendants; defendants do not deny it, nor did they object to its submission, but do argue that it should not have been given because there was no evidence to support it. The effect of the answer to the issue was that the elements of the truck driver being the temporary employee of Penrod during the period of unloading did not exist.

In these circumstances, the jury finding last referred to sets at rest the contention made by defendants that their truck driver was a temporary employee of Penrod and therefore a fellow servant with plaintiff. This being true we do not reach defendants' contention that to allow a recovery in this case by plaintiff because of the negligent acts of the truck driver, "a fellow servant" contravenes the public policy of this state.

We now turn to defendants' contention under their alternative pleadings, which were in substance that if their truck driver did not become the temporary employee of Penrod and a fellow servant with plaintiff at the time of the accident, then under the facts, circumstances and law plaintiff was the temporary employee of defendants during the period of unloading the pipes, when he was indisputably injured.

·The instant ·case presents one where judgment was entered non obstante veredicto, disregarding the jury verdict in all respects, and of course is purely procedural. To avoid the possible effect of a reversal by us of the court's action, as provided by Rule 325, Texas Rules of Civil Procedure, defendants have presented sixteen counter points of error as against a judgment being ordered entered on the verdict. It will not be necessary nor it is expedient to refer to each separately. First three counter points go especially to defendants' alternative defense above mentioned. First is, in substance, that plaintiff when injured was assisting defendants' truck driver in doing a job (stringing the pipes), which was the duty of defendants and their truck driver to do and plaintiff was therefore defendants' temporary employee under the borrowed servant rule; second, for that reason plaintiff's remedy against defendants was exclusively for compensation under the Louisiana law; and third, for the reasons shown plaintiff and the truck driver were fellow servants of defendants.

In their alternative plea defendants alleged they were principals, which we construe as meaning they were independent contractors in undertaking to haul the pipes for Penrod. Under the Louisiana law an independent contractor is said to be: "Any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished." Subd. 8, Sec. 4393, La. Gen.St. Act La. No. 20 of 1914, § 3, subd. 8, as amended, Act No. 85 of 1926, § 1. In view of the nature of the contract between defendants and Penrod above mentioned we think the alternative contention in this respect is correct.

Whether or not a part of defendants' duty under their contract was to string the pipes being hauled and to furnish all the labor incident thereto, becomes a deciding factor under defendants' counter point that plaintiff was assisting the truck driver to do a thing defendants were obligated to do. In some instances it could be safely said that one had not discharged his general obligation of hauling a commodity from one point to another until delivered to the consignee, and that the commodity was not delivered until unloaded from the carriers' car or vehicle, but this depends upon the contract of carriage. It is commonly known that absent a contract made by the carrier to unload a shipment, delivery may be made on-board the car or vehicle at destination, and failure of the consignee to unload promptly entitles the carrier to charge demurrage. We then look again to the original contract between Penrod and defendants, whereby the latter would haul and deliver the pipes from point of origin to destination, and in the event Penrod desired it, defendants would allow their driver to use his truck in stringing the pipes, for an agreed recompense for the time consumed. Under the custom between them if Penrod wanted a helper to accompany the driver to help string the pipes it would have been mentioned when the order was given, but no helpers were ordered; then under their previous practice defendants knew that if the contingency of stringing arose when the pipes arrived, it was intended by Penrod to furnish such helpers. Neither defendants nor the truck driver requested of Penrod's foreman to furnish help to string the pipes. There is a fair implication from the acts of the foreman in ordering plaintiff and another to help string the pipes that the foreman understood the custom and usage in such matters as did defendants. Yet, defendants through their agent, the truck driver, accepted the services of the helpers and their could be an inference arising therefrom that they were temporarily working for defendants. In this state of the evidence defendants requested the court to submit their requested issue No. 7, which reads: "Do you find from a preponderance of the evidence that plaintiff, C. R. Grandstaff, was assisting defendant or its employee in laying pipe at the time and place of the accident in question." The trial court refused to submit the requested issue; this action of the court is assigned as error in defendant's fourth counter

point. Under much of the loose language used by the witnesses with reference to aiding, assisting and helping to unload and string the pipes, either an affirmative or negative answer to the requested issue could mean different things. For instance, if the driver and both of ·Penrod's men were engaged as a team (as one witness expressed it) in unloading and stringing, each would be aiding, assisting and helping the other two; again inquiry was if plaintiff was assisting defendant's employee in "laying" the pipe; one witness only spoke of "laying" a gas line, after the pipes had been joined, yet other witnesses used the words "laying" and "stringing" pipes interchangeably. This alternative plea presented a special alternative defense by defendants and while we think the inquiry could have been. more specific in reaching the elements of the ultimate issue of whether or not plaintiff was at the time of the injury the temporary employee of defendant and more especially if those elements had been defined. by the court in some suitable way, the precise defense could and should have been submitted. The issue as requested might·be so construed as being an endeavor to ascertain from the jury if they found from the evidence that at the time of the injury plaintiff was temporarily working for defendant in unloading and stringing the pipes so that the court could enter judgment upon a conclusion of law therefrom that plaintiff was the borrowed servant of defendants and giving such effect thereto as the law may have required. Certainly if the case is tried again the requested issue can be improved upon even though it should require definitions and explanations. We believe the ends of justice require that the issue be tried out.

There are other phases of this case as it now stands which were not fully developed, one being whether or not defendants were subject to the workmen's compensation law of Louisiana. This would be material under their alternative plea. It may be doubted that when defendants alleged in their alternative plea that they were engaged in a hazardous trade or business that such allegation would fall within the category of judicial admissions.

The workmen's compensation law of Louisiana is in some respects different to those in Texas. There, it is provided by subdivision 2, section 4391, Louisiana ·Gen.St. Act La. No. 20 of 1914, § 1 subd. 2, that compensation is allowed .to "Every person performing services arising out of and incidental to his employment in the· course of his employer's trade, business or occupation in the following hazardous· trades, businesses and occupations :" Following this provision many enumerated trades, businesses and occupations are stated but the trade and business of hauling pipes and other heavy commodities (as were defendants') are not mentioned. By subdivision 3 of the same article it is provided in effect that if injury be sustained by an employee while in the course of his employment and the master is engaged in a trade not enumerated, the question of whether or not the business was a hazardous one must be determined by agreement of the master and servant or it may be submitted to the judge of the court. If defendants' business was not determined to be hazardous in one of the ways provided by law, then they were not subject to the compensation law and one of their contentions in the alternative phase. of the case would fail.

In a case which sheds little light on the statutory provisions last referred to, it was held that the general nature 'of the employer's business rather than the duties of a particular employee must determine whether or not the business is a hazardous one subjecting the employer to the workmen's compensation laws of Louisiana. Kern v. Southport Mill Limited, 174 La. 432, 141 So. 19.

We again observe that the judgment appealed from is one entered notwithstanding the verdict as a whole; this was tantamount in this case to having instructed a verdict in favor of defendants. A review of the conditions under which such summary proceedings are permitted may be found in Texas Employers Insurance Association v. Ferguson, Tex.Civ.App., 196 S.W.2d 677, writ refused, NRE. In LeMaster v. Fort Worth Transit ·Company, 138 Tex. 512, 160 S.W.2d 224, 226, the Su-

preme Court said on this point: "The rule is that, if the evidence is conflicting, the jury must decide the conflict; and if the evidence is not conflicting, but reasonable minds might differ as to its effect, still a fact issue is presented."

Defendants seek to support the court's judgment in both of their primary and alternative defenses with respect to loaned and borrowed servants by citing such authority as Spanja v. Thibodaux Boiler Works, La.App., 2 So.2d 668, cert. refused. Plaintiff attacking the judgment cites such cases as Kimbro v. Holladay et al., La.App., 154 So. 369 and Duke v. Dixie Building Material Co., La.App., 23 So.2d 822. All parties cite many more cases than those mentioned, some of which have a tendency to support their respective contentions. We have studied these cases and believe the apparent conflict in them may be attributed to a slight difference in the facts of each case where the principles were sought to be applied.

For the reasons herein stated, we have concluded that the trial court committed reversible error in entering the judgment non obstante veredicto; that defendants' counter points of error are sufficient to disclose prejudicial error committed against them over their objections on the trial as provided in Rule 324, Texas Rules of Civil Procedure. We therefore reverse the judgment of the trial court and remand the cause for another trial.

Reversed and remanded.

McDONALD, Chief Justice (concurring).

Because the appellate courts in this state, following the pattern set by the Supreme Court in many cases, exercise a considerable degree of discretion on the question of whether to reverse and render judgment, or reverse and remand for a new trial, I have concurred in the opinion written by Mr. Justice Speer, although I am very much inclined to think that the evidence shows without dispute that plaintiff was not a borrowed employee of defendants on the occasion in question.